# UNITED STATES DISTRICT COURT FOR BALTIMORE IN THE DISTRICT OF MARYLAND U.S.A

IN REF:

ST AUBIN JEAN DONALD PHILIPPE

VS

WECKERS INC ET ALL

DANIEL AND DONNA WECKERS DOING BUSINESS AS ELKRIDGE FURNACE INN

FILED ___ ENTERED
LOGGED ___ RECEIVED

JUN 2 7 2022

CLERK, AT BALTIMORE
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY ___ DEPUTY

Now comes for this plaintiff staubin j d philippe to sued this company for wrongfull discharged.

It is now by jean Donald staubin philippe to make this request due of the fact that Donna and Daniel hired me to be making $72000 a year as a food and beverage manager, I was a full time employee working at my old position as a manager of food and beverage at the Marriott hotel international. Mr Daniel hired me due of the fact I can speak French and Spanish and he had a diplomat that was coming to have a party at that location and for that reason mr Daniel and donna hired me with the intent to meke them look good in front of a diplomat after that elkridge furnace inn was busy with lots of weddings and come to understand that after july the business will be slow so therefore I must be dismiss because they are only need a manager temporary I could have work on a temporary basics that would have being any trouble for me to do that but by hiring someone and knowing in advance that this person will be dismiss from paying him $72,000 a year also I was aware soon I was terminated that this is not the first time they are doing this by hiring some one and get

rid of him because that is the way they are operated to generated money.

Conclusion of law:

This cause a great damage to jean Donald st aubin philippe beause his plan was to stay there until retirement it is therefore requested that an order be enter against the wecker inc in the amout of $432000 that is a six years payment for hiring a professional in the false pretense when business is slow and to get rid of that person it may be some differences between others but this time you hired some one that was working that is wrong and I cannot tell when will I'll be able to get a job with my 61 years old age.

## Discussions
## Of laws

A **contract** is a legally enforceable agreement that creates, defines, and governs mutual rights and obligations among its parties.[1] A contract typically involves the transfer of goods, services, money, or a promise to transfer any of those at a future date. In the event of a breach of contract, the injured party may seek judicial remedies such as damages or rescission.[2] Contract law, the field of the law of obligations concerned with contracts, is based on the principle that agreements must be honoured.[3]

Contract law, like other areas of private law, varies between jurisdictions. The various systems of contract law can broadly be split between common law jurisdictions, civil law jurisdictions, and mixed law jurisdictions which combine elements of both common and civil law. Common law jurisdictions typically require contracts to include consideration in order to be valid, whereas civil and most mixed law jurisdictions solely require a meeting of the minds between the parties. Within the overarching category of civil law jurisdictions, there are several distinct varieties of contract law with their own distinct criteria: the German tradition is characterised by the unique doctrine of abstraction, systems based on the Napoleonic Code are characterised by their systematic distinction between different types of contracts, and Roman-Dutch law is largely based on the writings of renaissance era Dutch jurists and case law applying general principles of Roman law prior to the Netherlands' adoption of the Napoleonic Code. The majority of Southern Africa uses a mixed law system under which private law, including contract law, is largely drawn from Roman-Dutch law while public law is drawn from English common law, while several former British colonies which were previously French apply a system in which private law is drawn from the French legal tradition.

*Main articles: Contract of carriage, Marine insurance,* and *Hague-Visby Rules*

Contracts for the transport of goods and passengers are subject to a variety of distinct provisions both under international law and under the law of individual countries. Presently, different provisions apply at the international level to contracts for transport by maritime, land, and air transport. With regard to maritime transport, the Hague-Visby Rules currently govern contracts for the international carriage of goods by sea in the vast majority of jurisdictions. In Singapore and the United Kingdom, provisions of each of the two countries' Carriage of Goods by Sea Act additionally apply the Hague-Visby rules to the domestic transport of goods by sea.[340][341] Similarly, the Montréal Convention and the Warsaw Convention provide standardised terms for the transport of passengers' luggage by air. Contracts for the international transport of goods by air and legal provisions regarding the international transport of passengers by any mode of transport are currently governed by a variety of domestic and international laws.

In an attempt to harmonise the complicated system of international law governing transport contracts, members of the Association of South East Asian Nations have adopted the ASEAN Framework Agreement on Multimodal Transport providing for standardised terms governing multimodal transport contracts within the bloc.[342] The Civil Code of the People's Republic of China (CCPRC) makes similar provisions for multimodal transport contracts.[343] Both the CCPRC and the ASEAN Framework provide for the primary multimodal transport operator to bear overarching contractual responsibility for damage or loss to the goods carried and provide for operators of particular legs of the transport contract to be treated as agents of the primary multimodal transport operator.[343][342] In China, chapter nine of the civil code additionally provides standard terms for the carriage of both passengers and goods by each mode of transport.[344]

With regard to maritime transport, common law jurisdictions additionally maintain special legal provisions regarding insurance contracts. Such provisions typically provide for the prohibition of contracts "by gaming or wagering" and prescribe special rules for double insurance, determining the existence of insurable interest, and governing the provisions that a maritime insurance policy must include.[345][346]

In Europe, the international carriage of passengers by rail is governed by the CIV. The CIV establishes terms governing the transport of passengers, along with any accompanying *articles* (hand luggage, registered baggage, vehicles and trailers) and live animals. The traveller is responsible for full supervision of animals and their hand luggage.

In some common law jurisdictions, a distinction is made between contract carriers (who transport goods or individuals per private contracts) and common carriers (who are generally obliged to transport any passengers or goods). In some European civil law jurisdictions, the equivalent concept is referred to as a public carrier. While contract carriers negotiate contracts with their customers and (subject to international conventions) are able to allocate liability and refuse customers subject only to consumer protection or anti-discrimination laws, common carriers bear full liability for goods and passengers carried and may not discriminate.

- Where the obligations of the two parties arise from the same contract, the other party's performance is due (regardless of whether the obligation's nature is ascertained

The requirement that the obligations be "of the same kind" is broader than the requirement in some legal systems that obligations being set-off be fungible, while still excluding obligations of a fundamentally personal nature.[4] Where the obligations in question are owed in different currencies, Article 8.2 provides that set-off may be invoked if the currencies in question are freely convertible and the parties have not agreed that the first party may only pay in a specified currency.[4] Rather than operating automatically or following a court's order, Article 8.3 provides that set-off may only be exercised by notice to the other party; furthermore, Article 8.4 further provides that if the notice does not specify the obligations to which it relates, the other party may do so by way of a declaration made within a reasonable time, failing which the set-off relates to all obligations proportionally.[4] The effect of set-off, as per Article 8.5, is that:[4]

- The relevant obligations are discharged
- If obligations differ in amount, set-off discharges the obligations up to the amount of the lesser obligation.
- Set-off takes effect as from the time of notice.

## Modification and assignment of contracts[edit]

Main article: Assignment (law)

Laws regarding the modification of contracts or the assignment of rights under a contract are broadly similar across jurisdictions. Modification refers to any alteration to the terms of the contract, whereas Assignment is the process whereby a person, the *assignor*, transfers rights or benefits to another, the *assignee*.[334] In most jurisdictions, a contract may be modified simply by a subsequent contract or agreement between the parties to modify the terms governing their obligations to each other. This is reflected in Article 3.1.2 of the Principles of International Commercial Contracts, which states that "a contract is concluded, modified or terminated by the mere agreement of the parties, without any further requirement".[4]

Assignments are typically subject to statutory restrictions, particularly with regard to the consent of the other party to the contract. While a party may typically assign monetary rights at their discretion provided that they notify the other party to the contract in a timely manner, most jurisdictions impose limitations on the ability of a party to assign non-monetary rights or to assign obligations they owe to the other party. In common law jurisdictions, an assignment may not transfer a duty, burden, or detriment without the express agreement of the assignee. The right or benefit being assigned may be a gift (such as a waiver) or it may be paid for with a contractual consideration such as money. Under Mainland Chinese law, a party to a contract may assign their rights "in whole or in part to a third person" except to the extent that a right is "not assignable by virtue of its nature", "in accordance with law", or due to the agreement between the parties.[335] In the United States, there are various laws that limit the liability of an assignee, often to facilitate credit, as assignees are typically lenders.[336][z]

In certain cases, the contract may be a negotiable instrument in which the person receiving the instrument may become a holder in due course, which is similar to an assignee except that issues, such as lack of performance, by the assignor may not be a valid defence for the obligor.[338] In the United States, the Federal Trade Commission promulgated Rule 433, formally known as the "Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defences", which "effectively abolished the [holder in due course] doctrine in consumer credit transactions".[338] In 2012, the commission reaffirmed the regulation.[339]

## Freight and transport contracts[edit]

wage and forfeiting the right to workman's compensation in cases where workman's compensation is due.

**Force majeure**[edit]

All jurisdictions, civil and common law alike, typically provide for contractual obligations to be terminated or reduced in cases of force majeure or (in traditional common law terminology) frustration of purpose. Article 7.1.7 of the Principles provides that "Non-performance by a party is excused if that party proves that the non-performance was due to an impediment beyond its control and that it could not reasonably be expected to have taken the impediment into account at the time of the conclusion of the contract or to have avoided or overcome it or its consequences".[4] Under the Civil Code of the People's Republic of China, any party to a contract may rescind it if "the purpose of the contract cannot be achieved due to force majeure".[303] Similarly, the Frustrated Contracts Act 1959 (Singapore) and subpart 4 of the Contract and Commercial Law Act 2017 (New Zealand) provide remedies for parties to contracts that cannot be performed due to force majeure including rescission, compensation for goods or services already provided, and the severability of portions of the contract that can and cannot be performed.[329][330] Additionally, the Chinese civil code provides that a party may terminate its contractual obligations if the party to whom its obligations are owned is under financial distress.[331]

**Hardship**[edit]

Contracts may, in certain circumstances, be modified or terminated at the behest of a party which, having taken on a contractual obligation, faced such hardship as to entitle it to a judicial nullification or modification of the contract. Hardship is defined by Article 6.2.2 of the Principles as " where the occurrence of events fundamentally alters the equilibrium of the contract either because the cost of a party's performance has increased or because the value of the performance a party receives has diminished" provided that either the risk of the events occurring was not assumed by the party alleging hardship or that the events' occurrence was "beyond the control of the disadvantaged party", unknown until after the conclusion of the contract, or "could not reasonably have been taken into account" by the party.[4] Article 6.2.3 of the Principles provides that a party facing hardship is entitled to request renegotiation of the contract and, if negotiations are unsuccessful, may apply to the appropriate court to terminate or modify the contract or provision thereof.[4]

**Set-off**[edit]
Main article: Set-off (law)

A partial defence available in a variety of civil, common, and mixed law jurisdictions is that of set-off or the netting of obligations. This entails forfeiting one or obligations owed by the other party in exchange for being excused for the performance of a party's own obligations toward the other party. It permits the rights to be used to discharge the liabilities where cross claims exist between a plaintiff and a respondent, the result being that the gross claims of mutual debt produce a single net claim.[332] The net claim is known as a net position. In other words, a set-off is the right of a debtor to balance mutual debts with a creditor. Any balance remaining due either of the parties is still owed, but the mutual debts have been set off. The power of net positions lies in reducing credit exposure, and also offers regulatory capital requirement and settlement advantages, which contribute to market stability.[333]

As per Article 8.1 of the Principles, "where two parties owe each other money or other performances of the same kind, either of them ("the first party") may set off its obligation against that of its obligee" ("the other party") if when set-off is invoked:[4]

- The first party is entitled to perform its obligation
- Where the obligations of the two parties do not arise from the same contract, the nature of the other party's obligation (i.e. existence and amount) is ascertained and performance is due

other party. Article 3.2.7 of the Principles provides that "a party may avoid the contract or an individual term of it if, at the time of the conclusion of the contract, the contract or term unjustifiably gave the other party an excessive advantage" and specifies that, in determining whether the term was inequitable, a court or arbitrator should consider the extent to which "the other party has taken unfair advantage of the first party's dependence, economic distress or urgent needs, or of its improvidence, ignorance, inexperience or lack of bargaining skill".[4] In addition to setting the contract aside, Article 3.2.7 also provides that courts may apply the blue pencil doctrine and modify or nullify any inequitable terms while leaving the contract otherwise intact.[4] In common law jurisdictions, the related equitable doctrine of undue influence enables courts to provide a remedy in situations involving one person taking advantage of a position of power or influence over another person. Where a special relationship exists, such as between parent and child or solicitor and client, courts in common law jurisdictions have broad discretion as to whether a remedy is provided. When no special relationship exists, the question is whether there was a relationship of such trust and confidence that it should give rise to such a presumption.[321][322][323] In Australian law, a contract can additionally be set aside due to unconscionable dealing.[324][325] Firstly, the claimant must show that they were under a special disability, the test for this being that they were unable to act in their best interest. Secondly, the claimant must show that the defendant took advantage of this special disability.[326][324]

### Illegal contracts[edit]
*Main article: Illegal agreement*

If based on an illegal purpose or contrary to public policy, a contract is *void*. This principle is codified by Article 3.3.1 of the Principles, which provides that:[4]

- Where a contract infringes a mandatory rule;[v] whether of national, international, or supranational origin; the effects of that infringement upon the contract are the effects...expressly prescribed by that mandatory rule.
- Where the mandatory rule does not expressly prescribe the effects of an infringement upon a contract, the parties have the right to exercise such remedies under the contract as in the circumstances are reasonable.
- In determining what is reasonable regard is to be had in particular to:
  - The purpose of the infringed rule
  - The category of persons for whose protection the rule exists
  - Any sanction that may be imposed under the rule infringed
  - The seriousness of the infringement
  - Whether one or both parties knew or ought to have known of the infringement
  - Whether the performance of the contract necessitates the infringement
  - The parties' reasonable expectations

Article 3.3.2 provides that, where reasonable, an infringement may warrant restitution.[4]

In the 1996 Canadian case of *Royal Bank of Canada v. Newell*[327] a woman forged her husband's signature, and her husband agreed to assume "all liability and responsibility" for the forged checks. However, the agreement was unenforceable as it was intended to "stifle a criminal prosecution", and the bank was forced to return the payments made by the husband. In the U.S., one unusual type of unenforceable contract is a personal employment contract to work as a spy or secret agent. This is because the very secrecy of the contract is a condition of the contract (in order to maintain plausible deniability). If the spy subsequently sues the government on the contract over issues like salary or benefits, then the spy has breached the contract by revealing its existence. It is thus unenforceable on that ground, as well as the public policy of maintaining national security (since a disgruntled agent might try to reveal *all* the government's secrets during his/her lawsuit).[328] Other types of unenforceable employment contracts include contracts agreeing to work for less than minimum

Common law jurisdictions identify three types of mistake in contract: common mistake, mutual mistake, and unilateral mistake.

- **Common mistake** occurs when both parties hold the same mistaken belief of the facts. This is demonstrated in the case of Bell v. Lever Brothers Ltd.,[312] which established that common mistake can only void a contract if the mistake of the subject-matter was sufficiently fundamental to render its identity different from what was contracted, making the performance of the contract impossible.[313] In Great Peace Shipping Ltd v Tsavliris Salvage (International) Ltd, the court held that the common law will grant relief against common mistake, if the test in Bell v. Lever Bros Ltd is made out.[314] If one party has knowledge and the other does not, and the party with the knowledge promises or guarantees the existence of the subject matter, that party will be in breach if the subject matter does not exist.[290]
- **Mutual mistake** occurs when both parties of a contract are mistaken as to the terms. Each believes they are contracting to something different. Courts usually try to uphold such mistakes if a reasonable interpretation of the terms can be found. However, a contract based on a mutual mistake in judgment does not cause the contract to be voidable by the party that is adversely affected. See Raffles v Wichelhaus.[315]
- **Unilateral mistake** occurs when only one party to a contract is mistaken as to the terms or subject-matter. The courts will uphold such a contract unless it was determined that the non-mistaken party was aware of the mistake and tried to take advantage of the mistake.[316][317] It is also possible for a contract to be void if there was a mistake in the identity of the contracting party. An example is in Lewis v Avery[318] where Lord Denning MR held that the contract can only be voided if the plaintiff can show that, at the time of agreement, the plaintiff believed the other party's identity was of vital importance. A mere mistaken belief as to the credibility of the other party is not sufficient. In certain circumstances, the defence of non est factum can be utilised in common law jurisdictions to rescind a contract on the grounds of a substantial unilateral mistake.[319] Under Article 3.2.10 of the Principles, where a contract is voidable by a party on the grounds of a unilateral mistake but the other party "declares itself willing to perform or performs the contract as it was understood by the party entitled to avoidance", "the contract is considered to have been concluded as the [other] party understood it" and "the right to avoidance is lost".[4]

**Threats and Unequal Bargaining Power**[edit]
*Main articles: Duress (contract law) and Undue influence*

The UNIDROIT Principles of International Commercial Contracts outlines a comprehensive list of circumstances in which fraud committed by or threats made by a party constitute grounds for avoiding the contract. With regard to threats, Article 3.2.6 provides that "a party may avoid the contract when it has been led to conclude the contract by the other party's unjustified threat" if the action threatened is so severe as to "leave the first party no reasonable alternative".[4] A threat is considered "unjustified" under Article 3.2.6 if "the act or omission with which a party has been threatened is wrongful in itself, or it is wrongful to use it as a means to obtain the conclusion of the contract".[4] In common law jurisdictions, the notion of an unjustified threat is referred to as "duress". Black's Law Dictionary defines duress as a "threat of harm made to compel a person to do something against his or her will or judgment; esp., a wrongful threat made by one person to compel a manifestation of seeming assent by another person to a transaction without real volition" and it constitutes grounds for setting aside a contract.[320] An example is in Barton v Armstrong [1976] in a person was threatened with death if they did not sign the contract. An innocent party wishing to set aside a contract for duress to the person only needs to prove that the threat was made and that it was a reason for entry into the contract; the burden of proof then shifts to the other party to prove that the threat had no effect in causing the party to enter into the contract. There can also be duress to goods and sometimes, 'economic duress'.

Aside from fraud and unjustified threats, contracts can also generally be set aside on the grounds that one party exercised its superior bargaining power in order to impose inequitable terms upon the

claim.[304] In order to obtain relief, there must be a positive misrepresentation of law and also, the person to whom the representation was made must have been misled by and relied on this misrepresentation:*Public Trustee v Taylor*.[305] There are two types of misrepresentation: fraud in the factum and fraud in inducement. Fraud in the factum focuses on whether the party alleging misrepresentation knew they were creating a contract. If the party did not know that they were entering into a contract, there is no meeting of the minds, and the contract is void. Fraud in inducement focuses on misrepresentation attempting to get the party to enter into the contract. Misrepresentation of a material fact (if the party knew the truth, that party would not have entered into the contract) makes a contract voidable. Assume two people, Party A and Party B, enter into a contract. Then, it is later determined that Party A did not fully understand the facts and information described within the contract. If Party B used this lack of understanding against Party A to enter into the contract, Party A has the right to void the contract.[306] According to Gordon v Selico [1986] it is possible to misrepresent either by words or conduct. Generally, statements of opinion or intention are not statements of fact in the context of misrepresentation.[227] If one party claims specialist knowledge on the topic discussed, then it is more likely for the courts to hold a statement of opinion by that party as a statement of fact.[307]

In Singapore and the United Kingdom, the Misrepresentation Act 1967 provides that innocent misrepresentations can also be grounds for damages and remission of the relevant contract.[308] Section 35 of the Contract and Commercial Law Act 2017 similarly provides for damages in cases of both innocent and fraudulent misrepresentation in New Zealand.[309] In assessing remedies for an innocent misrepresentation, the judge takes into account the likelihood a party would rely on the false claim and how significant the false claim was.[310] Contract law does not delineate any clear boundary as to what is considered an acceptable false claim or what is unacceptable. Therefore, the question is what types of false claims (or deceptions) will be significant enough to void a contract based on said deception. Advertisements utilising "puffing," or the practice of exaggerating certain things, fall under this question of possible false claims.[306]

The foundational principle of "caveat emptor," which means "let the buyer beware," applies to all American transactions.[306] In Laidlaw v. Organ, the Supreme Court decided that the buyer did not have to inform the seller of information the buyer knew could affect the price of the product.[304]

It is a fallacy that an opinion cannot be a statement of fact. If a statement is the honest expression of an opinion honestly entertained, it cannot be said that it involves any fraudulent misrepresentations of fact.[311]

### Mistake[edit]
*Main article:* Mistake (contract law)

Section 2 of the UNIDROIT Principles of International Commercial Contracts defines the extent to which a mistake is typically accepted in most jurisdictions as grounds to avoid a contract. Under Article 3.1.2 of the Principles, a "mistake is an erroneous assumption relating to facts or to law existing when the contract was concluded".[4] Article 3.1.3 of the Principles provides that "a party may only avoid the contract for mistake if, when the contract was concluded, the mistake was of such importance that a reasonable person in the same situation as the party in error would only have concluded the contract on materially different terms or would not have concluded it at all if the true state of affairs had been known".[4] Additionally, Article 3.1.3 provides that a party seeking to avoid a contract must show that either "the other party made the same mistake, or caused the mistake, or knew or ought to have known of the mistake and it was contrary to reasonable commercial standards of fair dealing to leave the mistaken party in error" or "the other party had not at the time of avoidance reasonably acted in reliance on the contract."[4] However, a party cannot seek to avoid a contract on the grounds of a mistake if "it was grossly negligent in committing the mistake" or "the mistake relates to a matter in regard to which the risk of mistake ... should be borne by the mistaken party".[4]

different ways in which contracts can be set aside. A contract may be deemed 'void', 'voidable' or 'unenforceable', or declared 'ineffective'. Voidness implies that a contract never came into existence. Voidability implies that one or both parties may declare a contract ineffective at their wish. Kill fees are paid by magazine publishers to authors when their articles are submitted on time but are subsequently not used for publication. When this occurs, the magazine cannot claim copyright for the "killed" assignment. Unenforceability implies that neither party may have recourse to a court for a remedy. Ineffectiveness arises when a contract is terminated by order of a court, where a public body has failed to satisfy the requirements of public procurement law. This remedy was created by the Public Contracts (Amendments) Regulations 2009, (SI 2009–2992).

## Defences[edit]

Defences to claims under contract law include vitiating factors, which defences operate to determine whether a purported contract is either (1) void or (2) voidable, or assertions that the other party failed to perform their obligations within a reasonable period of time. With regard to contracts of a commercial nature, the UNIDROIT Principles of International Commercial Contracts provides a general outline of the grounds under which a contract can be set aside. Where a contract or term is voidable, the party entitled to avoid may either conditionally or unconditionally choose to affirm the contract or term as outlined in Article 3.2.9 of the Principles which states that "if the party entitled to avoid the contract expressly or impliedly confirms the contract after the period of time for giving notice of avoidance has begun to run, avoidance of the contract is excluded".[4] Additionally, Article 3.2.13 provides that "where a ground of avoidance affects only individual terms of the contract, the effect of avoidance is limited to those terms unless, having regard to the circumstances, it is unreasonable to uphold the remaining contract".[4]

Although provisions for the voidability of a contract for conduct of the other party are generally similar across jurisdictions, voidability on the grounds of a third party's conduct is more contentious. Article 3.2.8 of the Principles provides that where conduct constituting grounds for rescission "is imputable to, or is known or ought to be known by, a third person for whose acts the other party is responsible, the contract may be avoided under the same conditions as if the behaviour or knowledge had been that of the party itself". Similarly, while vitiating factors are similar across jurisdictions, the extent to which a failure by another party to a contract may form grounds for rescission or an early termination of contractual obligations varies between jurisdictions. For instance, Mainland Chinese law provides that a party may seek to rescind a contract or terminate its remaining obligations if the other party "expresses or indicates by act that it will not perform the principal obligation", "delays performance of the principal obligation and still fails to perform it within a reasonable period of time", or "delays performance of the obligation or has otherwise acted in breach of the contract, thus making it impossible to achieve the purpose of the contract".[303]

### Misrepresentation[edit]
*Main article: Misrepresentation*

Misrepresentation means a false statement of fact made by one party to another party and has the effect of inducing that party into the contract. For example, under certain circumstances, false statements or promises made by a seller of goods regarding the quality or nature of the product that the seller has may constitute misrepresentation. A finding of misrepresentation allows for a remedy of rescission and sometimes damages depending on the type of misrepresentation. Rescission is the principal remedy and damages are also available if a tort is established. Article 3.2.5 of the Principles of International Commercial Contracts provides that "a party may avoid the contract when it has been led to conclude the contract by the other party's fraudulent representation, including language or practices, or fraudulent non- disclosure of circumstances which, according to reasonable commercial standards of fair dealing, the latter party should have disclosed".[4]

In common law jurisdictions, to prove misrepresentation and/or fraud, there traditionally must be evidence that shows a claim was made, said claim was false, the party making the claim knew the claim was false, and that party's intention was for a transaction to occur based upon the false

performance in personal service contracts is only legal "*as punishment for a crime whereof the party shall have been duly convicted*".[297] Both an order for specific performance and an injunction are discretionary remedies, originating for the most part in equity. Neither is available as of right and in most jurisdictions and most circumstances a court will not normally order specific performance. A contract for the sale of real property is a notable exception. In most jurisdictions, the sale of real property is enforceable by specific performance. Even in this case the defences to an action in equity (such as laches, the *bona fide* purchaser rule, or unclean hands) may act as a bar to specific performance.

In jurisdictions applying Roman-Dutch law, a claim for specific performance is the primary and obvious and most basic remedy for breach of contract, upholding as it does the expectation interest of the creditor: When one enters into a contract, one expects performance in terms of it. This approach is contrary to that taken under English law,[298] where damages are preferred, and where specific performance is a special discretionary remedy that may be sought only in certain circumstances.[299][300] A claim for specific performance may be for the payment of a sum of money (*ad pecuniam solvendum*), a claim for the performance of some positive act other than payment of money (*ad factum praestandum*) or a claim to enforce a negative obligation. The remedy of specific performance is not absolute and does not guarantee success. Even where it is shown that there has been a breach, the remedy is not granted unless the innocent party is ready to perform and performance is subjectively and objectively possible for the defendant. The courts have exercised an equitable discretion to refuse a claim for specific performance, usually on the grounds of impossibility, undue hardship or in claims for the enforcement of personal services. An order for specific performance is enforced in keeping with the ordinary rules of procedure. The cases of *Benson v SA Mutual Life*, *Santos v Igesund* and *Haynes v King William's Town Municipality*[301] set out guidelines to be taken into consideration where the court is asked to grant specific performance. A court does not make an order for specific performance in cases where:

- Performance is personal.[302]
- There is a relative impossibility, where the specific person (an injured pop star, for example) cannot perform.
- Because it would have to supervise its decree, it would be difficult for the court to enforce it.
- The defendant is insolvent.
- Performance would severely prejudice third parties.
- It conflicts with public policy and would be inappropriate.
- As in *Haynes*, the cost to the defendant in being compelled to perform is out proportion to the corresponding benefit to the plaintiff, and the latter can equally well be compensated by an award of damages, an order is not made for specific performance. (The hardship of the contract at the time of its concluded, then, is not decisive of the matter; it may also be judged of at the time performance is claimed.)

In other civil law jurisdictions, the range of available remedies varies but typically includes provision for specific performance, rescission, declaratory relief, and injunctions although the distinction between specific performance and injunctions does not necessarily exist in all civil law jurisdictions. In jurisdictions with codified laws of obligations, the extent of remedies available and the circumstances in which they are provided is outlined in the civil or commercial code.

In Indian law, which like English law explicitly prefers awarding damages where this would be an adequate remedy, the Specific Relief Act 1963 codifies the rules surrounding specific performance and other remedies aside from damages. Relief available under the act is limited to recovery of possession of property, specific performance of contracts, rectification of instruments, rescission of contracts, cancellation of instruments, declaratory relief, and injunctions.

Where appropriate, courts in most common and civil law jurisdictions may permit declaratory relief or rescission of contracts. To rescind is to set aside or unmake a contract. There are four

of Australia and the Supreme Court of the United Kingdom over the first few decades of the twenty first century; whereby a penalty clause is unenforceable only if it is disproportionate to the "legitimate interests", not restricted to seeking compensation, of the non-infringing party.[286][287] In the province of New Brunswick, the Law Reform Act provides that a penalty clause is enforceable "to the extent that it is reasonable in all of the circumstances" and that "a court may determine in the circumstances of a case before it that a penalty clause or a liquidated damages clause should be enforced in full, in part or not at all".[288]

Compensatory damages compensate the plaintiff for actual losses suffered as accurately as possible. They may be "expectation damages", "reliance damages" or "restitutionary damages". Expectation damages are awarded to put the party in as good of a position as the party would have been in had the contract been performed as promised.[289] Reliance damages are usually awarded where no reasonably reliable estimate of expectation loss can be arrived at or at the option of the plaintiff. Reliance losses cover expense suffered in reliance to the promise. Examples where reliance damages have been awarded because profits are too speculative include the Australian case of McRae v Commonwealth Disposals Commission[290] which concerned a contract for the rights to salvage a ship. In Anglia Television Ltd v. Reed[291] the English Court of Appeal awarded the plaintiff expenditures incurred prior to the contract in preparation of performance.

After a breach has occurred, the innocent party has a duty to mitigate loss by taking any reasonable steps. Failure to mitigate means that damages may be reduced or even denied altogether.[292] However, Michael Furmston[293] has argued that "it is wrong to express (the mitigation) rule by stating that the plaintiff is under a duty to mitigate his loss",[294] citing Sotiros Shipping Inc v Sameiet, The Solholt.[295] If a party provides notice that the contract will not be completed, an anticipatory breach occurs.

Damages may be general or consequential. General damages are those damages which naturally flow from a breach of contract. Consequential damages are those damages which, although not naturally flowing from a breach, are naturally supposed by both parties at the time of contract formation. An example would be when someone rents a car to get to a business meeting, but when that person arrives to pick up the car, it is not there. General damages would be the cost of renting a different car. Consequential damages would be the lost business if that person was unable to get to the meeting, if both parties knew the reason the party was renting the car. However, there is still a duty to mitigate the losses. The fact that the car was not there does not give the party a right to not attempt to rent another car.

To recover damages, a claimant must show that the breach of contract caused foreseeable loss.[51][296] Hadley v Baxendale established that the test of foreseeability is both objective or subjective. In other words, is it foreseeable to the objective bystander, or to the contracting parties, who may have special knowledge? On the facts of this case, where a miller lost production because a carrier delayed taking broken mill parts for repair, the court held that no damages were payable since the loss was foreseeable neither by the "reasonable man" nor by the carrier, both of whom would have expected the miller to have a spare part in store.

**Specific relief**[edit]
Main articles: Specific performance, Specific Relief Act 1963, and Injunction

There may be circumstances in which it would be unjust to permit the defaulting party simply to buy out the injured party with damages. For example, where an art collector purchases a rare painting and the vendor refuses to deliver, the collector's damages would be equal to the sum paid.

In most common law jurisdictions, such circumstances are dealt with by court orders for "specific performance", requiring that the contract or a part thereof be performed. In some circumstances a court will order a party to perform his or her promise or issue an injunction requiring a party refrain from doing something that would breach the contract. A specific performance is obtainable for the breach of a contract to sell land or real estate on such grounds that the property has a unique value. In the United States by way of the 13th Amendment to the United States Constitution, specific

The UNIDROIT Principles of International Commercial Contracts, published in 2016, aim to provide a general harmonised framework for international contracts independent of the divergences between national laws as well as a statement of common contractual principles for arbitrators and judges to apply where national laws are lacking. Notably, the Principles reject the doctrine of consideration, under the grounds that the elimination of the doctrine "can only bring about greater certainty and reduce litigation" in international trade.[4] The principles also reject the abstraction principle integral to German law on the grounds that it and similar doctrines are "not easily compatible with modern business perceptions and practice".[4]

Contract law can be contrasted with tort law (also referred to in some but not all civil and mixed jurisdictions as the law of delicts), the other major area of the law of obligations. While tort law generally deals with private duties and obligations that exist by operation of law and provide remedies for civil wrongs committed between individuals not in a pre-existing legal relationship, contract law provides for the creation and enforcement of duties and obligations created by a prior agreement between parties. The emergence of quasi-contracts, quasi-torts, and quasi-delicts renders the boundary between tort and contract law somewhat uncertain. Other areas of the law of obligations which are occasionally treated as separate from both contract and tort law include the law of unjust enrichment.[5]

- Compensatory damages, which are given to the party injured by the breach of contract. With compensatory damages, there are two heads of loss, consequential damage and direct damage. In theory, compensatory damages are designed to put the injured party in his or her rightful position, usually through an award of expectation damages.
- Liquidated damages are an estimate of loss agreed to in the contract, so that the court avoids calculating compensatory damages and the parties have greater certainty. Liquidated damages clauses may serve either a compensatory or a punitive purpose and, when aimed at the latter, may be referred to as "penalty clauses". Penalty clauses serving a purely punitive purpose are void or limited on public policy grounds in most (though not all) common law jurisdictions but are generally enforceable in mixed and civil law jurisdictions, although jurisdictions which recognise penalty clauses may nevertheless permit courts to intervene in cases where enforcement would be inequitable.
- Nominal damages consist of a small cash amount where the court concludes that the defendant is in breach but the plaintiff has suffered no quantifiable pecuniary loss, and may be sought to obtain a legal record of who was at fault.
- Punitive or exemplary damages are used to punish the party at fault; but even though such damages are not intended primarily to compensate, nevertheless the claimant (and not the state) receives the award. Exemplary damages are not recognised nor permitted in some jurisdictions. In common law jurisdictions, exemplary damages are not available for breach of contract, but are possible after fraud. Although vitiating factors (such as misrepresentation, mistake, undue influence and duress) relate to contracts, they are not contractual actions, and so, in a roundabout way, a claimant in contract may be able to get exemplary damages.

Common law jurisdictions traditionally distinguish between legitimate liquidated damages, which are valid and enforceable; and penalties, which are usually prohibited as against public policy. The traditional test to determine which category a clause falls into was established by the English House of Lords in Dunlop Pneumatic Tyre Co Ltd v New Garage & Motor Co Ltd[280] In civil law jurisdictions, penalty clauses are permitted and seen to serve two purposes: deterring the obligee from defaulting on their obligations and providing predictable and guaranteed compensation for any breach of contract that takes place.[281] In Canadian common law provinces, penalty clauses are considered valid and enforceable provided that they are not unconscionable.[282][283][284] The Canadian position is similar to the middle-ground approach taken under Philippine contract law, which provides that a penalty clause providing for liquidated damages is enforceable unless either the clause is "iniquitous or unconscionable" or the breach of contract in question is not one that was envisioned by the parties when they concluded the contract.[285] A similar approach has been adopted by the High Court

```
                                        ____ FILED      ____ ENTERED
                                        ____ LOGGED     ____ RECEIVED

                                            JUN 2 7 2022

                                              AT BALTIMORE
                                        CLERK, U.S. DISTRICT COURT
                                          DISTRICT OF MARYLAND
                                    BY                        DEPUTY
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

St Aubin J. Donald Hinliffe

v.                                        Case No. _____

Wecker's Inc.

## **RETURN OF SERVICE**

I served the following documents (check all that apply):

- ☒ summons
- ☒ complaint and any attachments
- ☐ subpoena
- ☐ other - describe: _____

By (check method of service):

- ☐ Personal - place served: _____
- ☒ Certified mail, restricted delivery - attach green card
- ☐ Left copies at subject's dwelling house or usual place of abode with person of suitable age and discretion residing therein
- ☐ Other - describe: _____

On (name of person or entity served): _____

Date of service: _____

I declare under penalty of perjury under the laws of the United States that the foregoing information is true and correct.

06/30/22
Date

_____
Signature of Process Server

_____
Printed Name of Process Server



10:27

[REMINDER] Re: Res...

**Reminder**: You have a message awaiting a response

Salut Monsieur Donald! Chef Dan and I would like to continue our discussion regarding offering you full-time employment with us as the manager who oversees food and beverage service for our varied catered events. We are a small business compared to many places you have worked, but there is a certain satisfaction to working in our historic spaces along with our grounds and gardens. Perhaps you will enjoy working in a place that reminds you of the countryside in Haiti! We are offering you $72,000 and are willing to start your platinum health benefit with Kaiser after the first month just to make sure we are a good fit. The 15 personal days would start accruing from day 1 with us. If this sounds acceptable to you, we would like to get you started as soon as you are able. If you would like to stop by tomorrow, our wedding party arrives at 11 with ceremony at noon and all the celebration to follow. Just an intimate wedding for 41. I would have time to show your the ropes and start orienting you here.

I look forward to hearing back soon.

Cheers!!

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Staubin J. Donald Ratcliffe

v.

Weckers Inc, et al

Case No. _____

## CERTIFICATE OF SERVICE

I hereby certify that on __06-18-2022__, a copy of __Lawsuit against Elkridge Furnace Inn et al.__ which was electronically filed in this case on _____, was mailed via first class mail, postage prepaid, to __Elkridge Furnace Inn__

__06-20-22__
Date

__[signature]__
Signature

Printed Name and Bar Number

__1024 Rock Hill Ave 21229__
Address

__donaldstaubin@gmail.com__
Email Address

__443-635-5420__
Telephone Number